Catron, Ch. J.
The charge of the court m this case raises the question* whether, in this State, a partial payment is equal to a promise to pay the balance due? It is the first time the question has occurred in the State, and presents something of difficulty. In England, it has been long settled, that a partial payment was an acknowledgment of the balance of the debt, and; that it took it out of *314 the statute. Angel on Limitations, 257: Chitty on Bills, 887. This was the necessary result of the British decisions, which settled the law too conclusively to be questioned, that the slightest promise would take a barred claim out of the statute. Angel, ch. 21 and 22. The evil became so great, that in 1S28, the Parliament interfered, and enacted that no acknowledgment or promise should be sufficient evidence of a new or continuing contract, whereby to take any case out of the operation of the statute of limitations, unless said acknowledgment or promise should be made or contained in some writing, to be signed by the party chargeable therewith.
A course of decision, not to be overthrown, had es-. tablished, that the endorsement on a note by the plaintiff, if made before the formation cf the bar, could be given in evidence to resist the operation of the statute; and if made after the formation of the bar, slight proof that it was bona fide made would have the same effect. Angel, 258: 2 Starkie’s Ev. 311. Here was the anomaly presented, of a party making evidence for himself. This was also corrected by Parliament in the act of 1828, and such endorsement declared insufficient proof of payment, so as to take the case out of the statute, a seeming supererogation, when a writing signed by the party to be charged, was required as the evidence of a new promise, by a preceding section of the statute.
It is a fortunate circumstance for us that we are construing a statute of our own, and at liberty, to some extent, to disregard the British adjudications, and to profit by their experience. The perjuries and frauds, to fix debtors by new promises, became a prominent evil, and were productive of more mischief, in all probability, than the statute cured, and a writing signed by the party to be charged, is, in England, and it may presently be here, the only' safe evidence of acknowledgments or promises to pay.
The British courts were governed by their decisions, *315 iettiner in evidence of acknowledgments so slight and doubtful as to well nigh defeat the leading object ol the act of limitations; hence is was held,- a partial payment would take the case out of the statute. So must we be governed by our decisions, as to what'acknowledgments will defeat the bar. This court in Russell vs. Gass, (Martin and Yerger’s Rep. 273,) followed the doctrine of the Supreme Court of the United States in Clemenston vs. Wilson, (8 Cranch, 72,) and held, that it is not sufficient to take the case out of the act, that the claim should be acknowledged to have been originally just; but the acknowledgment must go to the fact that the debt is still due. The court will now remark, that the acknowledgment from which the new promise to pay is inferred, must be a plain, unambiguous admission that the debt was due and owing at the time of the acknowledgment; for want of this unambiguous admission, the cause was- decided for the defendant in Russell vs. Gass.
Pursuing this principle, did Matthews, by the payment of the ten dollars, admit he still owed to them a balance of the note? Could it not as fairly be inferred that the sum was the balance due after former payments, and was an extinguishment of the whole demand? Nothing was said by the defendant when the ten dollars was paid, and to construe the naked fact of the' partial payment, first into an admission that a balance of the debt was due and owing, and second, raise a promise to pay upon it, would be creating an exception to the plain words and meaning of the statute on evidence the most unwarrantable. Suit shall not be brought but within three years next after the cause of action, says the statute. The cause of action accrued on the 25th December, 1824: the demand was then barred, when the partial payment was made, and this suit was instituted on a new cause of action, a promise to pay grounded on the old consideration. The courts created the exception, that a demand might be sued for after the time to form the bar had expired, if the *316 debtor had, within the time, acknowledged it due and ow- . , . , . , , ° , , ing, and then let in evidence oí the acknowledgment, giving effect to the exception to an extent very nearly to overthrow the statute. That, a new promise may be grounded on'the old and'seeming extinguished consideration, is too well settled to be shaken; but the evidence of the new promise is within our control, and we think a' partial payment by no means sufficient, and order the Judgment of the court below to be affirmed.
Peck, J.
The only question debateable in this case is, whether the endorsement made by the holder of the note, within three years next before the suit was brought, takes the case out of the operation of the statute of limitations.
It is admitted, that the current of the British authorities are in favor of the exception, and saves the case from the bar. The British judges, not being satis fied with their own opinions, long held and practised upon', the Parliament, in the 9th of George IV. passed an act, which provides that no endorsement, or memorandum of payment, made after the time appointed for the act to take effect, by the creditor, is sufficient prool of such payment, to take the case out of the -statute.
There can be no question that such ought to have been the construction of 21 James I. ch. 16, for the limitation of actions and for avoiding suits at law. Had such been the construction, the act of 9th George IV- would have been useless: ours, being substantially a copy of the act of James I-, and the question not having been before made in our courts, so far as we are informed, it remains for us to give what we deem the proper construction of our act, upon the evidence of an endorsement of payment made within three years.
The principle upon which the cases have gone, is, that the payment is tantamount to an acknowledgment of the balance remaining due. Why may it not as well *317 be said, that the payment so made is a payment of the whole balance due ? The creditor having laid by, and not brought his suit, until time, under the statute, had created the bar, is as strong a presumption that the pay-tnent last made is a payment of the balance due, as an endorsement of payment of part is evidence of the apparent residue being unpaid.
In this state, the courts have expressed a determination to follow enactments, and not to make exceptions, for a seeming sake of justice, out of the enactments. The statute of frauds and perjuries is an instance. While the British judges made exceptions, this court has resisted them, adhering to the letter.
Our courts have been constantly repeating, that the plea of the statute of limitations is just as honest as any other; being one given by the law for the repose of society. Whenever the question has been raised, what new promise would be held sufficient to save the bar, we have said it should be such as was understandingly made, and the words sufficiently clear and intelligible to establish the promise to pay. The experience of man has shown, that with however much caution the admission of the debt, or the new promise, has been let in, it has been-productive of as much mischief as of good. The evidence let in, is an evidence of confession; it may have been misconstrued by the witness, when he received it, or distorted when he detailed it in court; and the supposed admission or promise to pay, procured in such a manner as renders it impossible to rebut the evidence offered to the point, if untrue. This, we must suppose, was the cause of the new enactment, in 9th George IV. that the new promise to take the case out of the statue should be in writing.
Our statute for the limiting of actions, does show that it was the understanding of those who penned it, that the bar should be positive when the time had elapsed. The act commonly called the book debt law, which must be *318 taken m connection with the act we are considering, , . , . ° makes the party a Witness to prove his own account; hut it expressly provides that he shall not be permitted to prove any items in the account of longer standing than two years. Here is a direct and positive bar; for the party may prove his dealings by his own oath, which lets in the book, .yet the evidence shall not extend back to any items which have stood for a longer period than two years. The object of both acts, as far as the provisions limiting the proof goes, is for repose.
-It is a rule of law, that a party tshall not be permitted to make evidence for himself. What is the endorsement on the back of the note but the creation, by the party, of evidence to sustain his action, which, but for that evidence, bad been barred? If no endorsement had been made, or in other words, in the absence of proof the time having run, the whole would have been barred.
Here the suit is for the same debt which had been barred; lessened in its amount, by the endorsement of the party who brings the action. It must be seen, that if such an act, on the part of a plaintiff, can save the bar of the statute, it will never run. The party will assume an air of honesty; endorse a part, as having been paid,, and defeat, thereby, a positive enactment of the legislature; and that, too, by a fraud which no evidence can reach.
GReen, J. concurred.
Judgment affirmed.