Wetzell
v.
Bussard.

---

[STATUTE OF LIMITATIONS.]

## WETZELL *against* BUSSARD.

An acknowledgment of a debt which will take a case out of the statute of limitations, must be unqualified and unconditional.

If it be connected with circumstances, which, in any manner, affect the claim, or if it be conditional, it may amount to a new.assumpsit, for which the old debt is a sufficient consideration ; or, if it be construed to revive the original debt, that revival is conditional, and the performance of the condition, or a readiness to perform it, must be shown.

Thus, where an action was brought, on a promise in writing to deliver a quantity of powder, and the original assumpsit being satisfactorily proved, the defendant relied upon the statute of limita-

1826.

Wetzell

Bussard.

tions; and one witness deposed, that the defendant told him that *the plaintiff need not have sued him; for if he had come forward and settled certain claims which defendant had against him, the defendant would have given him his powder:* To another witness, defendant said, that *he should be ready to deliver the powder whenever the plaintiff settled a suit, which Dr. E. had brought against him, &c.* *Held,* that those declarations did not amount to an unqualified and unconditional acknowledgment of the debt, but that the plaintiff ought to have proved a performance, or a readiness to perform the condition on which the new promise was made.

*Feb. 7th.*

This cause was argued by Mr. *Swann* for the plaintiff,[a] and by Mr. *Jones* and Mr. *Key* for the defendant.[b]

*Feb. 11th.*

Mr. Chief Justice MARSHALL delivered the opinion of the Court.

This was an action of assumpsit brought by the plaintiff in the Circuit Court of the United States for the District of Columbia, and county of Washington, on a promise in writing to deliver a quantity of powder. The defendant pleaded the general issue, and the statute of limitations. The original assumpsit having been satisfactorily proved, the plaintiff, to support the second issue, introduced a witness, who swore that the defendant, in a conversation with him soon after the commencement of the suit, said that the plaintiff need not have sued him, for if he had come forward and settled certain claims which the defendant had against him, the defendant would have given him

*a* He cited Swan v. Sowell, 2 *Barnw. and Ald. Rep.* 759. Leaper v. Tatton, 16 *East's. Rep.* 420. *Salk.* 29. Slubry v. Champlin, 4 *Johns. Rep.* 461.

*b* They cited Clementson v. Williams, 8 *Cranch,* 72. Bush v. Barnard, 8 *Johns. Rep.* 407.

his powder.   To another witness who spoke to him before the commencement of the suit, at the instance of the plaintiff, he said that he should be ready to deliver the powder whenever the plaintiff settled a suit which Doctor Ewell had brought against him in the District Court at Alexandria.   Other witnesses proved declarations of the same import.

The defendant demurred to this testimony, and the plaintiff joined in demurrer.   The Court gave judgment in favour of the defendant; and the plaintiff has brought his cause, by a writ of error, into this Court.

It is contended, on the part of the plaintiff, that he has proved an acknowledgment of the debt, and that such acknowledgment, according to a long series of decisions, revives the original promise, or lays a foundation on which the law raises a new promise.

The English, as well as American books, are filled with decisions which support this general proposition.   An unqualified admission that the debt is due at the time, has always been held to remove the bar created by the statute.   But where the terms of the acknowledgment are in any degree equivocal, or where some qualification has been  annexed to the admission, the question whether the declarations of the party amount to an acknowledgment of an existing debt on which the law will raise an assumpsit, has been differently determined.

*Leaper* v. *Tatton*, (16 *East's Rep*. 420.) was a suit against the acceptor of a bill of exchange,

who pleaded the statute of limitations. At the trial, the plaintiff offered a witness who swore that the defendant, when applied to for payment, said that he had been liable, but was not liable then, because the bill was out of date. He acknowledged his acceptance, but said he would not pay it, that it was not in his power to pay it. A verdict was taken for the plaintiff; and, on a motion for a new trial, Lord Ellenborough said, " As to the sufficiency of the evidence of the promise, it was an acknowledgment by the defendant that he had not paid the bill, and that he could not pay it ; and as the limitation of the statute is only a presumptive payment, if his own acknowledgment that he has not paid be shown, it does away the statute." Bayley, J. said, the acknowledgment was evidence of a debt; acknowledging his acceptance, and that he had not paid it, creates a debt. The rule was discharged.

Although, in this case, the defendant did not expressly admit the existence of the debt, the implication is irresistible. The reason he assigns for not being liable is, that the bill is out of date, and his reason for not paying it is his inability. The Court so understood the testimony ; and Lord Ellenborough speaks of his acknowledgment as amounting to an admission that he had not paid the bill, and could not pay it.

In the case of *Swan* v. *Sowell*, (3 *Barnw. & Ald*. 759.) Bayley, J. says, that if a party admits the debt, and does not say that it is satisfied, or refuses to pay it, alleging at the time an insufficient excuse for not paying it, the law will, in

these cases, raise an implied promise to pay the debt then acknowledged to be due.

The language of Mr. Justice Bayley is not entirely free from doubt. If, by " insufficient excuse," he means an excuse which in itself implies an admission that the debt remains due except for the bar created by the act of limitations, the proposition is undoubtedly supported by the general course of the cases. But if his declaration extends to an excuse, which, if true, furnishes a real objection to the payment of the claim, in whole or in part, we think it is laid down too broadly.

Both the English and American cases are very well summed up in a note in 4 *Johns. Rep.* 469. note b. The current of the English decisions seems to be in favour of the principle, that any expressions which amount to an admission that the debt was originally due, and has not been paid, will remove the bar created by the act, and revive the original assumpsit. The decisions, however, as to this point, have not been entirely uniform. In *Coltman* v. *Marsh,* (3 *Taunt. Rep.* 380.) on a motion to set aside a nonsuit in a case in which the statute of limitations had been pleaded, it appeared that the defendant had said to the plaintiff, " I owe you not a farthing, for it is more than six years since." It was contended, that these words ought to have been left to the jury ; but the Court refused the motion. So, in the case of *Leaper* v. *Tatton,* (16 *East's Rep.* 420.) the defendant said, " that he had been lia-

ble, but was not liable then, because the bill was out of date." Lord Ellenborough held, at *Nisi Prius,* that this might be considered as no more " than pleading the statute of limitations in his own person ;" and the verdict was taken on other words spoken at the same time. Yet these words imply very strongly that the debt was originally due, and remains unpaid.

Some of the American cases proceed on the idea of a new promise, for which the ancient debt is a sufficient consideration ; and this is a distinction of great importance, where the acknowledgment is connected with any thing required by the defendant.

In the case of *Clementson* v. *Williams,* (8 *Cranch's Rep.* 72.) this Court expressed the opinion, that the doctrine of reviving debts barred by the act of limitations, had been carried full as far as it ought to be carried, and that the statutes on that subject ought to be construed like other statutes, so as to effect the intention of the legislature. In that case, a declaration by one partner that the account was originally due, and that he had never paid it, and did not know that it had ever been paid, but supposed his partner had discharged it, was declared to be insufficient to take the case out of the statute. It is true, that the partnership was dissolved when this declaration was made, but the Court did not put the case on that point. It was determined on the insufficiency of the acknowledgment. We think, upon the principles expressed by the Court in the case in 8 *Cranch's Rep.* that an

acknowledgment which will revive the original cause of action, must be *unqualified and unconditional*. It must show positively that the debt is due in whole or in part. If it be connected with circumstances which in any manner affect the claim, or, if it be conditional, it may amount to a new assumpsit for which the old debt is a sufficient· consideration ; or if it be construed to revive the original debt, that revival is conditional, and the performance of the condition, or a readiness to perform it, must be shown.

1826.

Wetzell
v.
Bussard.

In the case at bar, the defendant said to one witness, that if the plaintiff had come forward and settled certain claims the defendant had against him, he would have given him his powder ; and to another he said, " he should be ready to deliver the powder whenever the plaintiff settled a suit which Doctor Ewell had brought against defendant in the Court of Alexandria, on account of a patent right and machine sold to him by the plaintiff."

These declarations do not amount to an *unqualified and unconditional* acknowledgment that the original debt was justly demandable. They assert a counter claim on the part of the defendant, which he was determined to oppose to that of the plaintiff. He did not mean to give validity to the plaintiff's claim, but on condition that his own should be satisfied. These declarations, therefore, cannot be construed into a revival of the original cause of action, unless that be done on which the revival was made to depend. It may be considered as a new promise, for which

the old debt is a sufficient consideration, and the plaintiff ought to prove a performance, or a readiness to perform, the condition on which the promise was made.

A distinction seems to have been taken in England, between a promise to pay a sum of money, and a contract for the performance of a particular act. In *Boydell* v. *Drummond,* (2 *Campb. N. P. Rep.* 157.) Lord Ellenborough said, " If a man acknowledges the existence of a debt barred by the statute, the law has been supposed to raise a new promise to pay it, and thus the remedy is revived; but no such effect can be given to an acknowledgment where the cause of action arises from the doing, or omitting to do, some act, at a particular moment, in breach of a contract."

But, without placing the cause on this distinction, the Court is of opinion, that the original cause of action is not revived, and that there is no error in the judgment.

Judgment affirmed, with costs. "

a The Courts, both in this country and in England, have frequently expressed their regret, that, in construing the statute of limitations, the original text had not been more strictly adhered to, so as to effectuate the intention of the legislature, proceeding upon the reasonable presumption furnished by the lapse of time, and upon the salutary policy of discouraging vexatious litigation. (See Bryan v. Horsman, 4 *East's Rep.* 599. Ward v. Hunter, 6 *Taunt. Rep.* 210. Brandran v. Wharton, 1 *Barnw. & Ald.* 463. Bartley v. Faulkner, 3 *Barnw. & Ald.* 288.) Mr. Evans, in the notes to his Translation of Pothier on Obligations, speaking of *Bryan* v. *Horsman,* has the following observations, which

are marked by the independent spirit of that able writer. " The decision was certainly in conformity with the series of precedents upon the subject; but, as to the general precedent of adhering to the mere authority of former cases, in opposition to the positive terms of an act of Parliament, or an established maxim of law, of placing a secondary above a primary authority, much doubt may fairly, and without disrespect, be entertained. Where the return to the ancient principle would be attended with material detriment, as by disturbing titles to real estates, held under the sanction of rules, which, however erroneous in themselves, have been established by a series of precedents, the reason for an adherence to the precedents evidently preponderates; but where there will be no immediate inconvenience beyond the immediate case, where the general consequences will be wholly prospective, I cannot but adhere to the opinion, (which I have, perhaps, expressed with obtrusive repetition,) that the Courts of justice have as much authority now to restore the law, as they have had before to subvert it; and that a correct principle of law is an authority entitled to a higher respect that an erroneous set of precedents. Considering the law, however, upon this particular subject, as now beyond the reach of argument, and aware how much my own opinion, upon the effect of precedent, is different from that which usually prevails in practice, I think it not irrelevant to suggest to persons whose claims are barred by the statute, and who wish to obtain an acknowledgment of the subsistence of the debt, the utility of filing a bill of discovery, obliging the defendant to state whether the debt was contracted, and whether it has been paid. If the subsistence of the debt is admitted, and without perjury, it cannot be denied, it will not, if there is any consistency of decision, be of any avail to add a claim to the protection of the statute." (2 *Evans' transl. Pothier Oblig. Appendix,* No. XV. p. 125. note b.) Mr. Serjeant Williams also remarks, that, " After all, it might, perhaps, have been as well, if the letter of the statute had been strictly adhered to; it is an extremely beneficial law, on which, as it has been observed, the security of all men depends, and is, therefore, to be favoured. (Green v. Revitt, 2 *Salk. Rep.* 421, 422.) And, although it will now and then prevent a man from recovering an honest debt, yet it is his own fault that he postponed his action so long; beside which, the permitting of evidence of promises and acknowledgments, within the six years, seems to

1826.

Wetzell
v.
Bussard.

1826.

Wetzell
v.
Bussard.

be a dangerous inlet to perjury." (2 *Williams' Saund.* 64 b. note.)

In the countries governed by the Roman civil law, a much more literal rule of interpretation has been always applied to their ordinances of prescription or limitation. Thus, in France, though a positive acknowledgment of the debt is sufficient to interrupt the running of the prescription, yet a verbal acknowledgment, when the debt exceeds 100 livres, can be of no use to the creditor, as the French law requires *all* contracts exceeding that amount (now 150 francs, *Code Civ. Nap.* No. 1341.) to be in writing; and this statute of frauds has also been very strictly adhered to by the Courts of justice in that country. (*Pothier, Des Oblig.* No. 660. 688. *Erskine's Inst. Law of Scotland,* b. 3. tit. 7. § 10.) But what is called the *decisory* oath may be tendered to the debtor in a manner somewhat similar to a bill of discovery, as suggested by Mr. Evans. (*Pothier; Des Oblig.* No. 660. 684. *Code Civ. Nap.* art. 2275.) That admirable system of jurisprudence which forms the basis of the municipal law of all Europe, (except England,) is strongly imbued with the principles on which the rules for the prescription or limitation of actions are founded. Many of the eminent Judges who have successively adorned the equity tribunals of England, have expressed their strong sense of the provident wisdom of these principles, derived from a deep knowledge of human nature, and adopted from a due regard to the peace and order of society. (See *Cas. temp. King,* 156. 4 *Bro. Ch. Cas.* 269. 1 *Ball & Beatt.* 156. 2 *Jac. & Walk.* 140. And for the doctrines of this Court as to the application of the analogy of the statute of limitations of possessory actions, &c. in equity, see Elmendorf v. Taylor, *ante,* Vol. X. p. 152. 168., and note a. *Ib.* p. 177. Prevost v. Gratz, *ante,* Vol. VI. p. 504. Thomas v. Harvie's Heirs, *ante,* Vol. X. p. 146. Hughes v. Edwards, Vol. IX. p. 489. 497. And, as to the presumption of grants from the lapse of time, see Ricard v. Williams, *ante,* Vol. VII. p. 59. 109.)

The Judges in this country have recently shown a strong disposition to break through the chain of authorities by which a mere acknowledgment of the existence of a debt has been permitted to take the case out of the statute of limitations of personal actions. See the very able judgment of Mr. Justice Spencer in *Sands* v. *Gelston,* (15 *Johns. Rep.* 511.) in which a powerful effort is made to rescue the statute from a series of misrepresentations which has

nearly destroyed its efficacy. See, also, *Roosevelt* v. *Mark*, (6 *Johns. Ch. Rep.* 266. 290.) where the authority of *Sands* v. *Gelstón* is recognised by Mr. Chancellor Kent, and the principle is asserted, that an acknowledgment, to take a case out of the statute of limitations, must be of a present, subsisting debt; and if the acknowledgment be qualified so as to repel the presumption of a promise to pay, it is not evidence of a promise to pay.

In the case referred to in the text, of *Clementson* v. *Williams,* (8 *Cranch's Rep.* 72.) this Court stated, that it had " been frequently decided, that an acknowledgment of a debt barred by the statute of limitations, takes the case out of the statute, and revives the original cause of action. So far as decisions have gone on this point, principles may be considered as settled, and the Courts will not lightly unsettle them. But they have gone full as far as they ought to be carried, and this Court is not inclined to extend them. The statute of limitations is entitled to the same respect with other statutes, and ought not to be explained away." The Court proceed to observe, that in the case then in judgment, there was " no promise, conditional or unconditional; but a simple acknowledgment. This acknowledgment goes to the original justice of the account; but this is not enough. The statute of limitations was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of discharge may be lost. It is not, then, sufficient to take the case out of the act, that the claim should be proved, or be acknowledged to have been originally just; the acknowledgment must go to the fact that it is still due. In the case at bar, the acknowledgment of J. Clarke is, that he had not discharged the account presented to him, but he does not say that it was not discharged. His partner may have paid it without the knowledge of Clarke; and, consequently, the declaration of Clarke that he had not himself paid it, and that he did not know whether his partner had paid it or not, is no proof that the debt remains due, and, therefore, is not such an acknowledgment as will take the case out of the statute of limitations."